NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CITYSIDE ARCHIVES, LTD., | : | Civil Action No. 15-1796 |
| *Plaintiff,* | : | |
| v. | : | OPINION |
| HUSDON HOSPITAL OPCO, LLC, et al., | : | |
| *Defendants.* | : | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**I.   INTRODUCTION**

**THIS MATTER** comes before the Court by way of Plaintiff Cityside Archives, Ltd.'s ("Plaintiff" or "Cityside") motion to remand this matter to the Superior Court of New Jersey, Bergen County. Dkt. No. 14. Defendants Hudson Hospital Opco, LLC; Hudson Hospital Holdco, LLC; HUMC Opco, LLC; HUMC Holdco, LLC; CarePoint Health Systems, LLC; Christ Hospital; and Hoboken University Medical Center (collectively, "Defendants") oppose the motion. Dkt. No. 17. The Court has considered Plaintiff's motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, Plaintiff's motion to remand is **GRANTED.**

**II.   BACKGROUND**

This case concerns various state causes of action based on Defendants' alleged failure to pay termination charges and fees for services Plaintiff performed after two bankruptcy reorganizations. Plaintiff Cityside Archives is a New York corporation that provides records

1

storage, retrieval, and information management services to various clients in New Jersey. Dkt. No. 1 ("Compl."), Ex. 1, ¶ 1. In 2001, Cityside entered into Storage and Service Agreements with two New Jersey hospitals: Hoboken University Medical Center ("Hoboken Hospital") and Christ Hospital. Id. ¶¶ 13, 32.

### Sales Agreements

The Storage and Service Agreements set forth the terms and conditions of storage and retrieval services that Cityside would perform. Id. The Christ Hospital Agreement provides, in relevant part:

> This Agreement shall be for a term of three (3) years beginning on the effective date set forth below. For any period beyond the original term, this Agreement shall automatically be renewed for successive terms of one (1) year at the schedule of rates then in effect for all Clients storing Stored Material(s) under a one year contract unless either party notifies the other by written notice at least sixty (60) days prior to the expiration of the original term . . .
>
> Upon permanent removal of Stored Material(s), including but not limited to returns to client and disposal and/or expiration and/or termination of this Agreement for any reason, Client is responsible for Permanent Removal and/or Termination Charge as set forth in Schedule C, Section 4(a), and 4(d) and Section 7(b) plus all outstanding invoices. All sums are to be paid to Cityside by check as a condition precedent to release of the Stored Material(s).

Id. ¶¶ 14. The Agreement also provides that the "[f]ailure of Client to dispute any invoice within 90 days of receipt of said invoice shall be deemed to be an admission of the invoices [sic] correctness." Id. ¶ 21. The Agreement with Hoboken Hospital contains similar, if not identical, provisions, although it only allows a 30-day invoice dispute period. Id. ¶ 33. The Agreements with Hoboken Hospital and Christ Hospital became effective in September 2001 and June 2004, respectively. Id. ¶¶ 13, 32.

2

**The Bankruptcies**

In August 2011, Hoboken Hospital filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code. In re Hudson Healthcare, Inc., No. 11-33014, Dkt. No. 1 (D.N.J. Bankr. Aug. 1, 2011). In October 2011, the bankruptcy court entered an Order ("Hoboken Hospital Sale Order") that authorized the sale of substantially all of Hoboken Hospital's assets to HUMC Holdco and Opco, which could assume or reject the Hospital's executory contracts. In re Hudson Healthcare, Inc., No. 11-33014, Dkt. No. 280. It also approved the form of the asset purchase agreement. Id. The Sale Order provided that "any executory contract or unexpired lease that is not either an Assigned Contract or a Designated Contract shall be deemed rejected as of the Closing Date . . . ." Id. ¶ 24. The Sale Order also granted the HUMC entities 120 days from the closing date to assume or assign any designated contracts. Id. ¶ 10. Unless the purchase agreement noted otherwise, the transfer of purchased assets would not "subject the Purchaser to any liability whatsoever with respect to the operations of the Debtor's business and/or the ownership of the Purchased Assets prior to the Closing." Id. ¶ I. The Sale closed on November 4, 2011. In re Hudson Healthcare, Inc., No. 11-33014, Dkt. No. 855 at 2. Defendants allege that HUMC did not assume the Storage and Service Agreement with Cityside within 120 days, and therefore the Agreement was deemed rejected as of the closing date. Dkt. No. 1, Notice of Removal ¶ 10.

In March 2013, Christ Hospital also filed for bankruptcy. In re Christ Hospital, No. 12-12906, Dkt. No. 1 (D.N.J. Bankr. Feb. 6, 2012). The bankruptcy court approved the sale of Christ Hospital's assets ("Christ Hospital Sale Order") and the Asset Purchase Agreement ("APA") between Christ Hospital and Hudson Hospital Propco and Opco ("Hudson entities"). In re Christ Hospital, No. 12-12906, Dkt. No. 290. The APA states that "[a]ll of Seller's Executory Contracts

3

and leases which are not Assumed Contracts on the Closing Date have been characterized as 'Designated Contracts,'" and provides for a post-Closing period during which the Hudson entities could assume or exclude contracts. Id., Ex. A § 2.6(b)(i). The Sale closed on July 13, 2012. In re Christ Hospital, No. 12-12906, Dkt. No. 296 ¶ 6. On December 3, 2012, the Hudson entities filed a Notice of Assumption of Designated Contracts setting forth the contracts they agreed to assume, including the Storage and Service Agreement with Cityside. Id. Ex. A.

After their assumption of the Agreement, however, the Hudson entities gave written notice to Cityside by letter dated March 28, 2013 of their intent not to renew the Christ Hospital Agreement after May 31, 2013, the last day of the Storage and Service Agreement's renewal period. Compl. ¶ 15.

Neither Christ Hospital nor the Hudson entities paid any of the termination charges listed in their Storage and Service Agreement. Id. ¶ 16.

### Post-Bankruptcy Services Rendered

After the culmination of the hospitals' respective bankruptcies, Defendants continued to use the storage, retrieval, and delivery services that Cityside provided. Id. ¶¶ 16, 35. In response, Cityside rendered monthly invoices to both hospitals. Id. ¶ 16. Defendants made payments on several, but not all, of those invoices. Id. ¶¶ 16, 19. Cityside received Defendants' last payments in connection with the invoices in October 2014, which paid charges through July of that year. Id. ¶¶ 20, 37.

Defendants have not made any new payments since then. See id. ¶¶ 22, 37. Hoboken Hospital and the HUMC entities have ignored Cityside's requests to bring the accounts current. Id. ¶ 37. Christ Hospital and the Hudson entities have affirmatively refused Cityside's requests and now dispute various fees dating back to 2012. Id. ¶ 22.

Meanwhile, Defendants still have not stopped using Cityside's services.  Id. ¶ 38.  Since December 1, 2014, Defendants made over twenty requests for retrieval of stored materials, which Cityside delivered, but which Defendants have not paid for.  Id. ¶¶ 26, 38.

Cityside alleges that Defendants' conduct constituted multiple breaches of the Storage and Service Agreements.  Id. ¶ 39.  Cityside accordingly invoked in writing its right to terminate the Agreements and demanded that Defendants pay all invoices, as well as accelerated storage and service fees and charges associated with the removal and deletion of Defendants' files.  Id. ¶¶ 40-41.

**State Court Action and Removal**

On February 12, 2014, Cityside filed a lawsuit in the Superior Court of New Jersey, Bergen County, alleged seven state law causes of action: (1) breach of the Storage and Service Agreements; (2) a declaratory judgment that Defendants breached the Agreements; (3) *quantum meruit*; (4) liability on open book accounts; (5) unjust enrichment; (6) attorneys' fees and costs pursuant to the Agreements; and (7) piercing the corporate veil of CarePoint Health Services as an alter ego of the Hudson and HUMC entities.  See id. ¶¶ 42-62.  Defendants filed a Notice of Removal on March 11, 2015, and the case was removed to this Court pursuant to 28 U.S.C. § 1452.  Dkt. No. 1.  Two days later, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 5.  On April 20, 2015, Cityside filed their opposition to Defendants' motion, Dkt. No. 13, and filed the instant motion to remand the case to Superior Court.  Dkt. No. 14.

### III.   MOTION TO REMAND

The parties dispute whether this matter should be remanded to state court.  Cityside argues that the Court cannot hear their case because the subject matter jurisdiction requirements for the

relevant statute—28 U.S.C. § 1334—are not met. Defendants reply that the Court cannot remand for two reasons. First, the Court has jurisdiction because the case meets the jurisdictional requirements under 28 U.S.C. § 1334(b). Second, the abstention doctrines under 28 U.S.C. § 1334(c) do not apply. The Court finds that it has jurisdiction because the case is related to the bankruptcy proceedings but must remand the case pursuant to the doctrine of mandatory abstention.

### A. Jurisdiction under 28 U.S.C. § 1334(b)

Defendants argue that the Court has jurisdiction under 28 U.S.C. § 1334(b) because the case is either a "core proceeding" or is "related to" the bankruptcy proceedings. The Court finds that it has jurisdiction because the case is "related to" the bankruptcy proceedings.

#### 1. "Core" and "Related to" Jurisdiction

Defendants based the removal of this case on 28 U.S.C. § 1452(a). See Notice of Removal at 2. Section 1452(a) permits a party to remove any claims in a civil proceeding, with the exception of certain proceedings not relevant here, as long as the district court has jurisdiction over the claims under 28 U.S.C. § 1334. Section 1334(b) grants district courts original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Said another way, "jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11." Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006) (citing In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir.2005)). The first three types are known as "core" proceedings, the fourth (i.e., "related to") as a "non-core" proceeding. Id. (citing In re Combustion Eng'g, Inc., 391 F.3d at 225); see 28 U.S.C. § 157.

#### 2. "Core" Proceeding Analysis

This action is not a core proceeding. First, the action cannot be a case "under" title 11 because that category of cases "refers merely to the bankruptcy petition itself." Stoe, 436 F.3d at 216 (quoting In re Combustion Eng'g, Inc., 391 F.3d at 225 n.38). Second, the proceeding does not "arise in" a bankruptcy case. Proceedings "arise in" a bankruptcy case "if they have no existence outside of the bankruptcy." Id. These include "such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens." Id. (citing 1 Collier on Bankruptcy § 3.01[4][c][iv] at 3–31) (internal quotations omitted). Cityside's breach of contract and equitable claims "clearly exist outside the context of bankruptcy." Id. at 218 (holding claims under Pennsylvania wage laws do not "arise in" bankruptcy).

Third, the case does not "arise under" title 11. A case "arises under" title 11 only "if it invokes a substantive right provided by title 11." Id. "Arising under" jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original jurisdiction in district courts "of all civil actions arising under the Constitution, laws, or treaties of the United States." Id. (internal citations omitted). Here, Cityside's Complaint asserts on its face causes of action arising exclusively under New Jersey law. It does not assert any cause of action under the Bankruptcy Code, nor does it seek to invoke substantive rights provided for under federal bankruptcy laws.

Defendants' argument that the case will eventually involve an interpretation of the bankruptcy court's orders does not alter the result. The fact that federal bankruptcy law is implicated as a defense to a plaintiff's claim does not change the fact that the claim itself does not "arise under" title 11. See id. at 217; Halper v. Halper, 164 F.3d 830 (3d Cir.1999) ("While [Defendant] asserts that New Jersey law would not enforce the [agreement] if [the debtor's] underlying obligation is void under federal bankruptcy law, this does not render these claims core

proceedings."); see also Rivet v. Regions Bank of Louisiana, 522 U.S. 470,475 (1998) ( "a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.").

Defendants' argument to the contrary is based on In re Christ Hospital, No. 14-472, 2014 WL 4613316 (D.N.J. Sept. 12, 2014).  The case, as the name suggests, involved the same underlying Christ Hospital bankruptcy at issue in this case (though it did not involve a removal proceeding).  There, the bankruptcy court granted the Hudson entities' motions to enforce the court's Sale and Confirmation Orders and to enjoin an unsuccessful bidder on the hospital's assets from pursuing claims in state court. Id. at *4.  The unsuccessful bidder requested reversal, the bankruptcy court denied, and the bidder appealed. Id. at *5.

In response to the bidder's jurisdictional challenge, the district court affirmed that the matter was a "core" proceeding.  The court held that "enforcement motions relating to the Sale Order and Confirmation Order are 'core,'" id. at *7, and the injunction on the state court claims "is not a resolution of state law claims, nor is such a resolution necessary to decide the pending motion." Id. at 10 (emphasis in original).  To the contrary, here, Defendants do not bring an enforcement motion to the same court that issued the original bankruptcy Order.  They merely attempt to avoid remand of a lawsuit that Cityside brought in state court.  And they do so on the tangential ground that they will eventually raise the Hoboken Hospital and Christ Hospital Sale Orders as defenses.  Moreover, if this Court denied remand, it would be required to resolve Cityside's state law claims—some of which could conceivably survive even if the bankruptcy orders create valid defenses.  As such, the bases that made In re Christ Hospital a "core" proceeding are not evident in the instant case.

8

### 3. "Related To" Analysis

While this action is not a "core" proceeding, it nevertheless falls within the Court's jurisdiction because it is "related to" the hospital bankruptcies. While non-core "related to" jurisdiction is "the broadest of the potential paths to bankruptcy jurisdiction," the minimum standard to retain jurisdiction is not entirely clear in a post-bankruptcy-confirmation process such as this. See In re Resorts Int'l, Inc., 372 F.3d 154, 163, 164-65 (3d Cir. 2004). Retention of post-confirmation jurisdiction is "normally appropriate . . . where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." Id. at 168-69. Cityside alleges that Christ Hospital, Hoboken Hospital, Hudson, and HUMC are required to pay for damages incurred and services rendered under their respective Service Agreements. If Defendants were found liable under Cityside's state law theories, it would affect the hospitals' confirmation plans by increasing their liabilities. A close nexus therefore exists between Cityside's lawsuit and the bankruptcy plans. See Faltas-Fouad v. St. Mary's Hosp., Passaic, N.J., No. 14-06021, 2015 WL 260907, at *3 (D.N.J. Jan. 20, 2015) (finding "related to" jurisdiction where plaintiff's state law claims would increase hospital's liabilities by requiring it to honor agreement).

Accordingly, the Court has jurisdiction over the case because it is "related to" the hospital's bankruptcy proceedings.

### B. Mandatory Abstention under 28 U.S.C. § 1334(c)(2)

Even though this case is "related to" Christ Hospital and Hoboken Hospital's bankruptcies, the Court concludes that it must be remanded pursuant to Section 1334(c)(2)'s doctrine of

9

mandatory abstention. Under the doctrine of mandatory abstention, a lawsuit must be remanded to state court if the following five factors are present:

> (1) a timely motion is made;
>
> (2) the proceeding is based upon a state law claim or state law cause of action;
>
> (3) the proceeding is 'related to' a case under title 11, but does not 'arise in' title 11 or 'arise under' title 11;
>
> (4) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and
>
> (5) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction

See 28 U.S.C. § 1334(c)(2); Stoe, 436 F.3d at 213; In re Donington, Karcher, Salmond, Ronan & Rainone, P.A., 194 B.R. 750, 757 (D.N.J. 1996).

All of these elements are present here. First, Cityside timely filed its motion to remand 40 calendar days after Defendants removed the case to federal court. See Allen v. J.K. Harris & Co., LLC, 331 B.R. 634, 642 (E.D. Pa. 2005) ("Within the Third Circuit, motions to abstain and/or remand that were filed between 15 and 45 days after the filing of a notice of removal or adversary proceeding have been found to be 'timely filed.'") (collecting cases); see also Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co., 62 B.R. 873, 877 (S.D.N.Y. 1986) (motion timely filed roughly 60 days after federal proceeding initiated). Second, the Complaint is based on state law causes of action. Third, as explained above, the proceeding is "related to" a case under title 11 but does not "arise in" or "arise under" title 11. Fourth, Plaintiff has already commenced the action in state court, and there is no indication that it cannot be timely adjudicated there.

Finally, the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334. Setting aside Section 1334, jurisdiction might exist in two ways: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (2) diversity jurisdiction pursuant to

28 U.S.C. § 1332.  This action, consisting entirely of state law claims, could only be commenced in federal court through diversity jurisdiction.

In order for diversity jurisdiction to exist, "every plaintiff must be of diverse state citizenship from every defendant" and the amount in controversy must exceed $75,000.  In re Briscoe, 448 F.3d 201, 215 (3d Cir. 2006).  "The party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."  Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007).  "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand."  Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992) (internal citations and quotation marks omitted).  Accordingly, the burden rests on Defendants to show that Cityside is not a citizen of the same state as any Defendant.

This case presents identical issues to those before this court in Woodbridge Center Property, LLC v. Woodbridge Pizza, LLC, No. 09-cv-2050, 2009 WL 2096058 (D.N.J. July 14, 2009) (Debevoise, J.).  In that case, the court determined that the defendants did not meet their burden of establishing other bases for jurisdiction outside of Section 1334(c)(2).  Id. at *3.  The court noted that the defendants were limited liability companies and were deemed to be citizens of the states in which each company partner resides.  Id. at *4 (internal citations omitted).  Because the defendants did not list the citizenship of every partner, they did not show complete diversity from the plaintiffs.  Id.  Defendants therefore failed to establish the existence of diversity jurisdiction.  Id.

Similarly, here, Defendants have not met their burden.  Cityside, a corporation, is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.  Lincoln Ben. Life Co. v. AEI Life, LLC, --- F.3d ---, 2015 WL 5131423, at *3 (3d Cir. Sept. 2,

2015). Limited liability companies such as Hudson Hospital Opco, HUMC Opco, Hudson Hospital Holdco, HUMC Holdco, and CarePoint Health Systems are, for the purposes of establishing diversity jurisdiction, citizens of every state in which members of those entities reside. Id. Defendants were therefore required to list the citizenship of every Defendant LLC's members and show that no member lives in New York, the state where Cityside was incorporated. See Compl. ¶ 1. They did not do so. Defendants' Notice of Removal only claims to establish jurisdiction through 28 U.S.C. § 1452. Notice of Removal at 9-10. Nowhere in the Notice do Defendants invoke diversity jurisdiction or discuss the parties' citizenship. Nor does their brief opposing the pending motion to remand discuss diversity or citizenship. Therefore, the Court finds that Defendants have failed to establish the existence of diversity jurisdiction.

Accordingly, the lawsuit must be remanded to state court under the doctrine of mandatory abstention because all five factors under 28 U.S.C. § 1334(c)(2) are present.

### C. Attorneys' Fees and Costs

Cityside has also moved for an award of attorneys' fees and costs associated with the remand. Where a district court orders a case remanded, the court may use its discretion to award attorneys' fees and costs to the party seeking remand. 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under section 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Saterstad v. Stover, 249 F. App'x 955, 956 (3d Cir. 2007) (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)).

Cityside argues that an award of fees and costs is warranted because Defendants' bases for removal were objectively unreasonable and unsubstantiated. The Court disagrees. As explained above, 28 U.S.C. § 1334 grants district courts "original but not exclusive jurisdiction of all civil

12

proceedings arising under title 11, or arising in or related to cases under title 11." The instant action met that requirement because it is "related to" (but does not "arise under") the hospital bankruptcies. "The fact that another provision—28 U.S.C. § 1334(c)(2)—requires the Court to abstain has no bearing on the propriety of Defendants' action in removing the case." Woodbridge Ctr. Property, 2009 WL 2096058, at *4 (denying award of fees or costs where case "related to" bankruptcy but was removed under permanent abstention doctrine). This is particularly true here because Defendants primarily argued that the case was a "core" proceeding, and mandatory abstention would therefore not apply. See In re Seven Fields Dev. Corp., 505 F.3d 237, 251 (3d Cir. 2007). Their argument on that point was incorrect, but it was not frivolous. Defendants therefore had an objectively reasonable basis for removal. Plaintiff's motion for attorneys' fees and costs is denied.

### IV. CONCLUSION

For the reasons set forth herein, Plaintiff's motion to remand, Dkt. No. 14, is **GRANTED** but the motion for fees and costs is **DENIED**. Defendants' motion to dismiss, Dkt. No. 5, is hereby administratively terminated as moot. An appropriate Order accompanies this Opinion.

**Dated: October 27, 2015**              */s Madeline Cox Arleo*_____
                                         **Hon. Madeline Cox Arleo**
                                         **United States District Judge**